## Bateh v. Shihadeh et al.

*Russell I. Brownback,* for plaintiff; *Lazelere & Wright,* for garnishee.

KNIGHT, P. J., May 18, 1934.—Essa Bateh, having obtained a judgment against Bahia A. Shihadeh, issued an attachment execution, which was served upon Shihadeh, a corporation. Interrogatories to the garnishee were filed on February 7th of this year and served upon Shihadeh. Instead of answering the interrogatories, the garnishee obtained this rule to show cause why the attachment should not be dissolved.

From the petition supporting the rule, we learn that the above defendant is the owner of certain stock of the garnishee, that said stock has not been surrendered to the garnishee, and that no proceedings to enjoin the transfer or negotiation of said stock have been instituted. These facts are neither admitted nor denied by the answer of the plaintiff.

The relevant law is contained in the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, secs. 13 and 14, which read as follows:

"No attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined. . . .

"A creditor whose debtor is the owner of a certificate shall be entitled to such aid from courts of appropriate jurisdiction by injunction and otherwise, in attaching such certificate or in satisfying the claim by means thereof, as is allowed at law or in equity in regard to property which can not readily be attached or levied upon by ordinary legal process."

The plaintiff was within his rights when he issued the attachment execution, and the proper service of the writ on the garnishee is not denied. There is nothing before us to show that the only property of the defendant in the hands of the garnishee was the debt due defendant on shares of its capital stock. For this reason alone, the present rule should be discharged. Assuming, however, that only the stock of defendant in garnishee were involved, still we think the latter should answer the interrogatories. We can find no case in which the exact question has been raised and decided. In Edward F. Henson & Co. v. Stetser et al., 26 Dist. R. 155, 156, Judge Ferguson, in considering the language of the two sections of the Act of 1911 above quoted, said:

"We do not understand this to mean that an execution or an attachment may not issue, but rather that they shall not be effective except under the conditions stated."

We agree that this is a correct interpretation of the act, but the question still remains, at what point must ancillary proceedings in equity be instituted —before the filing and answering of the interrogatories, or afterward?

Reading the fourteenth section of the Act of 1911, above quoted, leads to the conclusion that it was the intention of the legislature that the courts should lend their aid to the attaching creditor in satisfying his claim by levy upon property of the debtor not readily seized by ordinary legal process.

It is conceded that the present attachment cannot be made effective until the holder of the stock is enjoined from transferring the same. The information necessary to file a bill for this purpose can best be obtained from answers to interrogatories.

We are of the opinion that both the spirit and the language of the Act of 1911, supra, require us to dismiss this rule.

Counsel for the garnishee cites and relies upon Pottash et al. v. Albany Oil Co., 274 Pa. 384. This case arose under the Uniform Bills of Lading Act of June 9, 1911, P. L. 838, which has provisions similar to, but not identical with, the provisions contained in sections 13 and 14 of the Uniform Stock Transfer Act, above quoted. The court in that case decided that the requirements of the Uniform Bills of Lading Act similar to, but not identical with, the requirements of the Uniform Stock Transfer Act cannot be complied with, except by obtaining an injunction preventing the further negotiation of the bill. It was not decided at what stage of the proceedings it was necessary to file the required bill. In fact, there is a dictum in that case which tends to support our view that the injunction need not be asked for until answer is made to the interrogatories. Said Justice Simpson, in the course of the opinion (p. 389):

"It is further urged by plaintiffs, however, that, if the railroad's construction be correct, viz., that the bill must be 'first surrendered to the carrier or its negotiation [first] enjoined,' by the time notice is given and an injunction obtained, the goods will be beyond the jurisdiction of the court. Without definitely deciding the point, since the only question raised on this record is whether

or not an injunction is required at some stage of the proceedings, and not overlooking the fact that, if the true construction requires an injunction to be obtained, the matter is one for the legislature and not for us, we may nevertheless point out that there is but one 'first' in the printed clause; and hence it may possibly be satisfied by an injunction after attachment of the goods, provided it is promptly applied for and obtained (as specified in the next sentence) before the carrier is 'compelled to deliver the actual possession of the goods,' when either the bill must be 'surrendered to him or impounded by the court.' "

It is to be noted that in the Uniform Stock Transfer Act the word "first" is not used in section 13.

And now, May 18, 1934, the rule is discharged, and the garnishee is directed to file an answer to the interrogatories within 15 days from this date.

From Aaron S. Swartz, Jr., Norristown, Pa.